JONES *v.* BROOKS.

5-2302                                    343 S. W. 2d 99

Opinion delivered February 20, 1961.

*J. Harrod Berry,* for appellant.

*Rose, Meek, House, Barron, Nash* and *Williamson,* for Citizens Coach Co., *O. D. Longstreth, Jr.,* for Russell M. Brooks and *O. D. Longstreth, Jr.,* for appellee.

CARLETON HARRIS, Chief Justice. Asa Jones and wife instituted an action in the Pulaski Chancery Court, seeking to enjoin alleged misuse of, and trespass, upon property allegedly owned by them; they also alleged

damage to a purported street between their property and lands used by the Citizens Coach Company (the latter property being immediately south of the alleged street), and asked that appellees be required to restore the street to its former condition. Initially, the complaint was filed on December 15, 1958, against Russell M. Brooks and Citizens Coach Company, but was subsequently amended, by leave of the court, on October 27, 1959, to include O. D. Longstreth, Jr., as a party defendant. Appellants claimed ownership of certain property, described in the complaint, and located at the corner of Thayer and 19th Streets. From the survey introduced into evidence by appellants, it appears that the legal description embraces a rectangular plot of land with a "finger" of land some 2.5 feet wide, projecting west for a distance of 132.5 feet. With the rectangular plot and strip of land, appellants claim a southern border of some 275 feet abutting the alleged street right-of-way. In their complaint, appellants asserted that appellees wrongfully converted 19th Street to their own use, and removed large quantities of dirt from the street without providing lateral support to appellants' lot, this last causing continuous caving and sloughing from their property; further, that appellees had wrongfully dug out and hauled soil from the 2.5 x 132.5 feet strip belonging to the Joneses. For relief, appellants prayed, *inter alia,* that appellees be required to replace the dirt removed; to build a retaining wall along the entire southern boundary of appellants' lot, and they prayed that appellees be permanently restrained from further using and damaging their land. After the filing of answers and various motions by appellees, the case proceeded to trial, and at the conclusion of appellants' evidence, each of the appellees filed his and its separate motion challenging the sufficiency of the evidence and asking that appellants' cause of action be dismissed. The court granted all three motions, holding:

".  .  . that the motions challenging the sufficiency of the evidence to warrant the Court to grant the relief prayed for on the record existing should be granted.

The undisputed proof offered by the plaintiff shows that any work that was done on the property in question was performed by persons acting for and in behalf of O. D. Longstreth, Jr., who at all times pertinent was acting as an independent contractor. Said acts on the part of O. D. Longstreth, Jr., were performed by him prior to the time that either Citizens Coach Company or Russell M. Brooks had any interest in and to the property in this cause. Any claim that the plaintiffs may have against O. D. Longstreth, Jr., is barred by the statute of limitations, not having been brought within three years. The Court makes no specific holding as to the additional grounds set forth by the defendants in their motions challenging the sufficiency of the evidence.''

From the decree entered in accordance with this finding, appellants bring this appeal.

Interrogatories were propounded to appellees by appellants, and the answers given reflect that the excavating of the street and a portion of the 2.5 foot strip claimed by appellants, was carried out by the Garner Construction Company, which was employed by Longstreth, and according to the evidence, this excavating commenced in March, 1956, and ended during the latter part of May or first part of June, 1956. Jones testified that Longstreth told him that this work was being done by his (Longstreth's) employees, and appellant's testimony denotes that several conversations were held with this appellee. It is readily apparent that appellants were aware of Longstreth's activities relative to the excavating long before the work was finished; yet, suit was not instituted against Longstreth until October 27, 1959, well over three years after obtaining this knowledge. Section 37-206, Ark. Stats. Anno. (1947) provides that all actions for trespass on lands must be commenced within three years from the time the cause of action accrued. See also *Arkansas Power & Light Co.* v. *Decker,* 181 Ark. 1079, 28 S. W. 2d 701. It follows, therefore, that the Chancellor was correct in dismissing the cause of action as to this appellee.

However, under our holding in *Werbe* v. *Holt*, 217 Ark. 198, 229 S. W. 2d 225, we are of the opinion that the court erred in granting the motion as to the other two appellees. In the cited case, we held that it is the duty of the trial court, in passing upon a demurrer to the evidence, to give the evidence its strongest probative force in favor of the plaintiff, and to rule against the plaintiff only if his evidence, when so considered, fails to make a *prima facie* case. The trial judge, at this point in the litigation, is not permitted to weigh the evidence. Applying this rule, we think appellants made a sufficient showing to constitute a *prima facie* case. The record, particularly the interrogatories, is somewhat difficult to follow, but some evidence and circumstances are presented which support appellants' alleged cause of action against appellees Brooks and Citizens Coach Company. The answers of Brooks to the interrogatories reflect that Citizens Coach Company conveyed its property south of 19th and east of Thayer to him, though he stated that he did not remember the date and consideration. In its answer to a like question, Citizens Coach Company stated that the property was sold to Brooks in October, 1957, and leased back to it on October 1, 1957 (apparently the same date as the sale). Brooks stated that he did not know who removed the dirt, where it was taken to, how much was removed, when it was done, or who paid for it, but he did admit that one of the lots, known as the DeJarnett lot, was graded by Garner at his (Brooks') authorization, and that he paid for it. The grading of this lot included some of the 2.5 foot strip claimed by appellants. This one answer was sufficient to make a *prima facie* case against Brooks, since part of the damage claimed related to this portion of the 2.5 foot strip.

The bus company likewise, in its answers to interrogatories on April 27, 1959, denied knowledge of who cleared, leveled, and graded, the Citizens Coach property; also, it denied knowledge of when the area of West 19th, between the Citizens Coach property and the Jones' property was excavated and graded, who did it, or who

paid for the job. The company also denied knowledge as to who removed the dirt therefrom, where the dirt was taken to, when it was done, or who paid for doing so. The company, in its Answer to the Complaint, admittedly acquired title to the real estate on Thayer, south of and adjacent to West 19th, from Geraldine Shook, on April 1, 1956.[1] Some of the answers given by the company on the first date seem to conflict with answers given to interrogatories on February 4, 1960, at which time the company stated:

"After Citizens Coach Company was granted a franchise to operate in Little Rock and North Little Rock, it became necessary to locate lands on which to place its buildings and equipment. It entered into a written contract with O. D. Longstreth, Jr., dated April 11, 1956, under the terms of which the company paid him a fixed sum out of which to acquire and grade lands suitable for the company. Mr. Longstreth acted as an independent contractor throughout the transaction, and not as an employee of the company.

"Thereafter, the company entered into a written contract with Russell M. Brooks, dated July 21, 1956, for the construction of a building on the said lands. Under the said contract, Mr. Brooks was an independent contractor."

On the February date, the company, in reply to interrogatory No. 9, stated that Brooks owned 250 shares of stock in the company from March, 1956, to November, 1956, at which time he acquired 1245 additional shares; that all were voting shares, and that he conveyed all of his stock to the company on October 12, 1957, in exchange for the lands and building heretofore mentioned. Certainly, there are circumstances that somewhat indicate that the bus company and Brooks were not only aware of the excavating that was being done, but were participating in seeing that it was done. It is difficult to feature the company entering into a contract with Longstreth, by which it agreed to pay him a fixed sum to acquire and grade lands suitable for its purposes, without ever know-

---

[1] In its answer to interrogatories, the bus company stated that this property was acquired on April 12, 1956.

ing what lands had been selected by Longstreth; in fact, the company stated that it acquired the Shook property the first part of April, 1956, which was at a time that the excavating was being carried out, and only a short time after the work was started. While it may well be that appellees can establish that Longstreth was an independent contractor, and they had no connection with the excavating, we think the evidence just related warrants an explanation. As stated in *Werbe* v. *Holt, supra*:

"Furthermore, in many instances the plaintiff's *prima facie* case must necessarily be somewhat weak, for the reason that only the defendant himself may be able to supply details needed to complete the picture. If the case goes to the trier of the facts on the plaintiff's proof alone, the defendant has the advantage of not exposing weaknesses in his own armor unless called to the witness stand by his adversary. For these reasons, we have no hesitancy in adopting the majority rule as to the function of a demurrer to the evidence."

Other proof offered by appellants is also sufficient to preclude the granting of the motions challenging the sufficiency of the evidence. Jones and his wife testified that the excavation of the street (to the extent of about 10 feet deep) left their property "high off the street", and without lateral support; that the slope had washed, and several large places had caved. Mr. Jones testified that there was a continual caving toward his property, and that Brooks had told him that a retaining wall would be built; that Brooks was present when the excavating was going on; that Brooks and an employee of Citizens Coach Company placed a "private property" sign in the middle of 19th Street following the excavating, and blocked the street with barriers of cross-ties to prevent it being used by the public.[2] Mr. W. F. Williams, registered professional engineer, testified that he found evidence of corroding and caving along the bank, and he suggested that a retaining wall should be constructed, or that the bank be graded and sodded to a safe degree of

---

[2] There is no proof in the record that the street had been abandoned.

slope in keeping with usual stabilization practices, as protection to Jones.

Appellees vigorously contend that the Joneses cannot recover for alleged damage to their premises because they failed to deraign title back to the sovereignty of the soil. It is true we have held that in ejectment suits, suits to quiet title, and suits to enjoin continued trespass, a plaintiff must rely upon the strength of his own title and not upon the weakness of that of his adversary. *Thomason* v. *Abbott,* 217 Ark. 281, 229 S. W. 2d 660. Also, he must deraign title from the government or show adverse possession of the land. *Griffin* v. *Isgrig,* 227 Ark. 931, 302 S. W. 2d 777. Appellants did not go this far back in deraigning their title, and they did not offer sufficient proof to show adverse possession to the strip heretofore mentioned. However, while the transcript does not make the matter entirely clear, it appears that counsel for appellants endeavored and offered to show the chain of title. The record reflects:

''Mr. Berry: At this point, your Honor, I would like to show the chain of title. I neglected to bring that out.

The Court: I don't think there is any dispute on that.

Mr. Berry: If they will stipulate that Mr. and Mrs. Jones have title as per deed and deraign their title through on down through Mrs. Johnson, I believe that was the grantee in the deed from the Riffels and the Rhotons.

Mr. Carroll: We don't stipulate that they have title. We stipulate there are deeds which show the description indicating thereon, indicating that they have a record title to the land described therein but we don't stipulate that their title is good for it is the contention of the defendants if the plaintiffs ever owned a seven foot strip that is 132 feet long, they have lost that as a result of adverse possession of DeJarnett and others.''

Counsel for Brooks and Longstreth also made a similar statement. It is thus clearly indicated that the matter of

the Joneses' record title was covered by stipulation; at any rate, counsel for appellants could have so inferred, and it would be manifestly unfair, in view of the quoted colloquy, to hold appellants barred from recovery for alleged damage to their lands, because of failure to deraign title from the government.

The decree, insofar as it dismisses the cause of action against Longstreth, is affirmed; as to Brooks, and the Citizens Coach Company, the decree is reversed, and the cause remanded for further proceedings.

GEORGE ROSE SMITH, J., not participating.